IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-03196-RBJ

AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation,

    Plaintiff,

v.

HIGH COUNTRY COATINGS, INC., a Colorado corporation, and
ZURICH AMERICAN INSURANCE CO., a New York corporation,

    Defendants.

# ORDER

This matter is before the Court on defendant High Country Coatings, Inc.'s ("HCC") motion for a partial summary judgment, ECF No. 14, and its motion to stay, ECF No. 23. For the reasons below, the Court GRANTS HCC's motion for a partial summary judgment [ECF No. 14] and GRANTS IN PART and DENIES IN PART its motion to stay [ECF No. 23].

## I. FACTS

Defendant HCC is a Colorado-based subcontractor that applies floor coatings. *See* Compl., ECF No. 2, at ¶4. In November 2012 it subcontracted with Brinkman Construction, Inc. ("Brinkman") to install epoxy and urethane coatings and joint caulking on concrete floor slabs in an airport hangar at Loveland Airport in Loveland, Colorado. Aff. of David Anderson, ECF No. 14-1, at ¶2. After HCC finished its work, Brinkman and the project owner, Otter Aviation, LLC

("Otter"), allegedly discovered that the coating HCC had applied started to "bubble." [1] *Id.* at ¶3. Brinkman and Otter subsequently demanded that HCC replace its coating. *Id.* Initially disputing whether it had any obligation to do so, HCC later agreed to install a new floor covering under a "Floor System Agreement." *Id.* at ¶4; ECF No. 14-2 (Floor System Agreement). That Agreement required Tennant Company and Tennant Sales and Service Company ("Tennant")—the supplier of the original floor coating—to supply a different coating to the job site that HCC would subsequently install. *Id.*

Sometime before it signed the Agreement, HCC apparently submitted a claim to its general liability insurance company at the time, Liberty Mutual, for "damages" at Loveland Airport.[2] ECF No. 27-11 (ClaimSearch Inquiry). HCC then took out a one-year policy with Auto-Owners Insurance Company ("AOIC"), the plaintiff in this action. ECF No. 27-2 (HCC's Policy). HCC's commercial general liability policy with AOIC became effective on May 1, 2014—roughly two months before HCC began replacing the floor coating under the terms of the Agreement. *Id.*; ECF No. 14-1 at ¶¶4–5.

HCC subsequently finished applying the new coating on August 14, 2014. ECF No. 2 at ¶12. This new coating, however, also allegedly "bubbled." *Id.* at ¶12. Again, Brinkman, this time through its insurance provider, defendant Zurich American Insurance Company ("Zurich"),

---

[1] The "bubbling" of the coating was allegedly caused by high levels of trapped moisture in the concrete that activated an "alkali-silica reaction" ("ASR") that subsequently damaged the concrete floor slabs. ECF No. 14-1 at ¶7. HCC argues that had did not have knowledge that ASR was present in the concrete and was therefore not responsible for the resulting damage. *See* ECF No. 14-1 at ¶¶7–8.

[2] The "claim details" list the "injury" of this claim as "damage to concrete floor and coating." ECF No. 27-11. As will be discussed in greater detail below, the parties dispute whether HCC had knowledge of damage to the concrete slabs before taking out a policy with AOIC in 2014. HCC argues that it only had knowledge of such damage after the second coating it applied allegedly bubble, which was after its policy with AOIC went into effect. Relying on the claim above and other evidence, AOIC argues that HCC had knowledge much earlier. However, the date of this claim (May 1, 2012) appears to come months *before* HCC subcontracted with Brinkman to perform work at Loveland Airport (November 29, 2012). *See supra*. The parties do not explain much less acknowledge what appears to be a chronological discrepancy.

demanded that HCC replace the floor coating. *Id.* at ¶13. HCC refused.[3] *Id.* Zurich subsequently sued HCC in Arapahoe County District Court on November 17, 2016. ECF No. 14-3 (Zurich's Complaint). In its complaint, Zurich alleges that HCC relied on improper floor testing when applying its coatings, failed to let the floor slab properly dry out before performing its work, and that both of HCC's floor coatings subsequently damaged the Airport hangar's concrete floor. *Id.* at ¶¶12–16. For purposes of this case, that lawsuit will be referred to as the "Underlying Action."

<ins>Procedural History</ins>

With the Underlying Action pending, AOIC filed suit against both HCC and Zurich on December 29, 2016.[4] ECF No. 2. Here, AOIC asserts a claim for declaratory relief against HCC. *Id.* It contends that AOIC has neither a duty to defend HCC in the Underlying Action nor an obligation to indemnify it should Zurich ultimately prove successful in that case. *Id.* at ¶18; *see also Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556 (Colo. 1996), *as modified on denial of reh'g* (Jan. 13, 1997) (permitting anticipatory declaratory judgment actions to determine the "duty to defend").

HCC answered AOIC's complaint on February 3, 2017. Def.'s Answer, ECF No. 13. In its answer, HCC asserts two counterclaims against AOIC for: (1) breach of contract; and (2) bad faith and unfair dealing. *Id*. at 6–8 (¶¶1–14); *supra* note 3. That same day, HCC filed a motion for a partial summary judgment. ECF No. 14. In that motion, HCC argues that, based on the

---

[3] After refusing to replace the coating, HCC filed a claim with AOIC which AOIC subsequently denied. ECF No. 2-4 (Denial Letter). HCC's counterclaims concern this denial. This Order does not address the merits of those claims.

[4] AOIC named Zurich as a defendant even though no claims are filed against it here because the Colorado Supreme Court has held that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration[.]" *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 562 (Colo. 1996), *as modified on denial of reh'g* (Jan. 13, 1997).

allegations Zurich has made in the Underlying Action, that AOIC does in fact have a duty to defend it in that underlying case. *See generally id.*

AOIC responded to HCC's motion for a partial summary judgment on March 6, 2017. ECF No. 27. As part of its response, AOIC asked the Court to conduct limited discovery on the question of whether HCC had knowledge of damage to the concrete at Loveland Airport before its policy with AOIC incepted. *Id.* at 11–12. HCC subsequently filed a motion to stay any such discovery, to bifurcate and stay a determination of whether AOIC has a duty to indemnify HCC, and to bifurcate and stay both of HCC's counterclaims. ECF No. 23. Both of HCC's motions are fully briefed and ripe for review.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

Because my resolution of HCC's motion for a partial summary judgment affects the outcome of HCC's motion to stay, I address HCC's motion for a partial summary judgment first.

### A. HCC's Motion for a Partial Summary Judgment [ECF No. 14].

HCC's motion for a partial summary judgment raises one discrete issue: does AOIC have a duty to defend HCC in the Underlying Action under Colorado law? For the reasons below, I say "yes."

### A. The "Complaint Rule."

Colorado, like other states, follows the "complaint rule" in actions such as these to determine whether an insurance company has a duty to defend an insured in an underlying action. *See Pompa v. American Family Mutual Ins. Co.*, 520 F.3d 1139, 1145–47 (10th Cir. 2008). As the Colorado Supreme Court has explained, that rule essentially tasks a court with reading the complaint in the underlying action and the parties' insurance policy in order to determine whether the facts alleged against the insured "might fall within the coverage of the policy." *Miller v. Hartford Cas. Ins. Co.*, 160 P.3d 408, 410 (Colo. App. 2007). In other words, under the complaint rule a court determines without the aid of any additional extrinsic evidence whether the allegations in the underlying action "state a claim which is potentially or arguably within the policy coverage[.]" *Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (internal quotation marks and citation omitted).

Importantly, even if there is "some doubt as to whether a theory of recovery within the policy coverage has been pleaded" in the underlying action, "the insurer *must* accept the defense of the claim." *Id.*; *see Colo. Farm Bureau Mut. Ins. Co. v. Snowbarger*, 934 P.2d 909, 911 (Colo. App. 1997) ("The actual liability of the insured to the claimant [in the underlying action]

5

is not the criterion which places upon the insurance company the obligation to defend."); *see also Hecla*, 811 P.2d at 1089 ("An insurer seeking to avoid its duty to defend an insured bears a heavy burden."); C.R.S § 13-20-808 (discussing the duty to defend and stating that "[t]he long-standing and continuing policy of Colorado favors a broad interpretation of an insurer's duty to defend the insured under liability insurance policies and that this duty is a first-party benefit to and claim on behalf of the insured").

Because the complaint rule tasks a court with deciding only whether the claims in the underlying action *might* be covered by the parties' policy, a determination of an insurance company's duty to defend does not necessarily decide whether the company must ultimately indemnify the insured should the claimant in the underlying action prevail. *Minn. Lawyers Mut. Ins. Co. v. King*, 10-CV-00916-WYD-MEH, 2010 WL 4449371, at *3 (D. Colo. Nov. 1, 2010). Instead, the court's determination of whether an insurance company has a duty to defend is merely a means by which all parties can obtain clarity regarding their respective rights and obligations during the pendency of the underlying action. *See also Pompa*, 520 F.3d at 1146 (explaining the two rationales the Colorado Supreme Court has given for the complaint rule: (1) that "the rule protects the insured's legitimate expectation of a defense[;]" and (2) that it "prevents the insured's defense in the underlying action from being compromised," because no extrinsic evidence is utilized) (internal quotation marks and citations omitted).

The issue of whether a company has a duty to defend and whether it must indemnify are therefore ostensibly separate inquiries, the latter inquiry becoming "ripe" once liability of the insured in the underlying action has been determined. *See Hecla*, 811 P.2d at 1086 n.5. However, if a court determines that an insurance company does not have a duty to defend, it logically follows that the company also does not have a duty to indemnify the insured. *See King*,

2010 WL 4449371, at *3 ("Where there is no duty to defend, it follows that there can be no duty to indemnify.").

**B. Exception to the "Complaint Rule."**

No state appellate court in Colorado has recognized any exceptions to the complaint rule's bar on the use evidence besides the underlying complaint and policy. *See, e.g.*, *KF 103-CV, LLC v. Am. Family Mut. Ins. Co.*, 630 F. App'x 826, 830 (10th Cir. 2015) (unpublished). The Tenth Circuit, however, has. *See Pompa*, 520 P.3d at 1147. In *Pompa*, the court adopted a widely-recognized exception used in other jurisdictions that "an insurer should not have a duty to defend an insured when the facts alleged in the complaint ostensibly bring the case within the policy's coverage, but other facts that are not reflected in the complaint and are unrelated to the merits of the plaintiff's action *plainly* take the case outside the policy coverage." *Id.* (emphasis added). Importantly, as this exception makes clear, the extrinsic "facts" sought to be introduced to defeat a duty to defend have to be widely known and undisputed in order to be allowed in. *See id.* at 1147–48.

The fact sought to be introduced in *Pompa* provides one such example. Plaintiff David Pompa pled guilty to negligent homicide after an altercation he had with Mr. Steven Domianus resulted in Mr. Domianus' death. *Id.* at 1141. Mr. Domainus' heirs subsequently brought a wrongful death action against Mr. Pompa in Colorado state court. *Id.* While that action was pending, Mr. Pompa's homeowner's insurance company, American Family Mutual Insurance Company ("AFM"), refused to defend Mr. Pompa or commit to indemnify him. *Id.* Mr. Pompa subsequently brought a declaratory action against AFM, arguing, among other things, that under a pure application of Colorado's "complaint rule" AFM was required to defend him since Mr.

7

Domanius' heirs had not alleged the crucial fact (i.e. his conviction) that took their claim outside the scope of his policy.[5]  *Id.* at 1141–45.

Affirming the district court's granting of AFM's motion for summary judgment, the Tenth Circuit acknowledged that it was true that Mr. Pompa's "conviction" for negligent homicide was not an element of the wrongful death action and therefore not a "fact" that Mr. Domanius' heirs had necessarily pled in their complaint.  *Id.* at 1145–49.  Nevertheless, the court reasoned that because this extrinsic fact of Mr. Pompa's "conviction" was clearly undisputed and widely known (indeed, the court could take judicial notice of it), and because it undoubtedly took Mr. Pompa's potential liability far outside the scope of his policy with AFM, this case warranted a break from the complaint rule's bar on the use of extrinsic evidence.  *See id.*

The Tenth Circuit thereby adopted the "exception" described above, explaining that Colorado courts would also likely reach the same result for three reasons.  *Id.* at 1147–48.  First, because Mr. Pompa had no reasonable expectation of a defense given that an indisputable fact defeated his arguments for coverage.  *Id.*  Second, because such an exception would not jeopardize Mr. Pompa's defense given that his conviction was widely known.  *Id.* at 1148.  And finally, because such an exception served the beneficial purpose of freeing AFM from "having to defend an action that from the outset clearly [fell] . . . outside the policy's coverage[,]" which the Tenth Circuit recognized was one reason the Colorado Supreme Court permitted anticipatory declaratory actions to determine a duty to defend in the first place.  *Id.* (citing *Constitution Assocs.*, 930 P.2d at 563).

---

[5] The underlying action in *Pompa* resulted in a judgment against Mr. Pompa that he could not pay.  *See Pompa*, 520 F.3d at 1141.  Mr. Pompa subsequently entered into a settlement agreement with Mr. Domanius' heirs whereby "he agreed to bring an action against AFM and assign to them the bulk of the proceeds he obtained."  *Id.*  The Tenth Circuit noted that a "close cousin" to that kind of claim was "a bad-faith allegation framed to trigger an insurance policy[.]"  *Id.* at 1149 (internal quotation marks and citations omitted).  For that additional reason, the Tenth Circuit rejected a strict application of the complaint rule to Mr. Pompa's lawsuit.  *See id.*

8

### C. AOIC has a Duty to Defend HCC in the Underlying Action.

Here, AOIC gives three reasons why it believes the parties' policy does not cover the allegations made in the Underlying Action and therefore why it does not have a duty to defend HCC in that case. ECF No. 27 at 6–18.

First, it contends that the exception as described in *Pompa* should apply because it is "undisputed" that HCC had prior knowledge of damage at the project site before HCC's policy with AOIC incepted and therefore clear that the allegations Zurich makes in the Underlying Action are outside the scope of the policy. *Id.* at 6–10. Second, AOIC argues that given HCC's prior knowledge, the "Known Loss" doctrine—i.e., the doctrine that states that insurance cannot be obtained on prior or ongoing losses—similarly defeats any duty to defend. *Id.* at 10–12. Finally, AOIC argues that even under a rigid application of the complaint rule—i.e., without extrinsic evidence regarding HCC's knowledge of damage—the parties' policy plainly does not cover the allegations made in the Underlying Action. *Id.* at 12–18. For its part, HCC argues that a rigid application of the complaint rule is warranted, and that it subsequently results in a duty to defend. ECF No. 14 at 5–10; ECF No. 31 at 2–4. As explained below, I agree with HCC that the complaint rule applies, and that it results in a duty to defend on the part of AOIC.

**1. Because the Issue of HCC's Prior Knowledge of Damages is Disputed the *Pompa* Exception Does Not Apply.**

First, I find that the exception to the complaint rule as described in *Pompa* does not apply here. As discussed above, the Tenth Circuit adopted an exception to the complaint rule in *Pompa* because the fact of Mr. Pompa's conviction for negligent homicide, although it had not been pled in the underlying action, was clearly known, undisputed, and made Mr. Pompa's claim for insurance coverage unreasonable on its face. *Pompa*, 520 F.3d at 1145–49. Here, by contrast, the "extrinsic" fact that AOIC argues defeats its duty to defend—i.e., that HCC had

9

prior knowledge of the damage at the project site before inception of its policy with AOIC—is vigorously contested by HCC.[6] *See* ECF No. 14-1 at ¶11 (testifying that "[p]rior to May 1, 2014 HCC had no notice of any claim of alleged property damage at the Project to the concrete slabs."). For that reason alone, *Pompa* is distinguishable. *See Pompa*, 520 F.3d at 1148.

What's more, since *Pompa* the Tenth Circuit has expressly stated its preference to refrain from creating more exceptions to the complaint rule until the Colorado Supreme Court provides "clear authority" for courts to go beyond the "plain language of [that] . . . rule[.]"[7] *See, e.g.*, *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 961 (10th Cir. 2011) (refusing to consider extrinsic evidence on the issue of an insurer's knowledge of damages to the floors installed by the insured). Although this pronouncement did not "undo" the *Pompa* exception to the extent the facts of a given case fit that rule, *Landmark Am. Ins. Co. v. VO Remarketing Corp.*, 619 F. App'x 705, 711 n.2 (10th Cir. 2015) (unpublished), the Tenth Circuit has nevertheless clearly expressed a desire to adhere to the complaint rule as rigidly as possible to prevent federal courts from altering Colorado law as established by the Colorado Supreme Court. *United Fire*, 633 F.3d at 961. For those reasons, the complaint rule must be the standard by which I determine whether AOIC has a duty to defend.[8]

---

[6] AOIC even acknowledges that it needs to conduct additional discovery to "flesh out" to what extent HCC knew about damages caused by its allegedly defective coating. ECF No. 27 at 11–12. Furthermore, HCC disputes whether damages to the concrete at Loveland Airport in fact occurred, which is an issue that is central to the claims and defenses in the Underlying Action. ECF No. 14-1 at ¶7. That disputed issue additionally renders *Pompa* inapplicable here. *See Pompa*, 520 F.3d at 1147 (rationalizing the exception to the complaint rule because the fact of Mr. Pompa's conviction for negligent homicide was neither an element of the cause of action in the underlying wrongful death suit nor a defense in that litigation).

[7] The Tenth Circuit recognized a second exception to the complaint rule in *Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1190 (10th Cir. 2010) for allegations contained in separate but factually related complaints. It has nevertheless refused to expand the list since then.

[8] Given how the Tenth Circuit has interpreted Colorado's complaint rule and my discussion of that rule *supra*, I also find unavailing AOIC's reliance on *Hamlet Homes Corp. v. Mid-Continent Cas. Co.*, 2013

## 2. The "Known Loss" Doctrine Also Does Not Apply Either.

Similarly, I find unpersuasive AOIC's attempt to invoke the "Known Loss" doctrine to defeat its duty to defend. The central issue with that doctrine is whether HCC had prior knowledge of alleged damages at Loveland Airport before taking out a policy with AOIC. Given that answering this question requires the use of extrinsic evidence, application of the doctrine in this case would amount to an exception to Colorado's complaint rule. *See Am. Family Mut. Ins. Co. v. Teamcorp*., Inc., CIV.A. 07-CV-00200WY, 2009 WL 321679, at *5 (D. Colo. Feb. 10, 2009) (rejecting the application of the "Known Loss" doctrine because the evidence surrounding knowledge offered in that action "would impact the merits of the underlying case" and, importantly, because "the Colorado Supreme Court has not adopted an exception to the complaint rule"). For the same reasons discussed *supra* Part III.C.1, then, I conclude that the "Known Loss" doctrine has no application here.

## 3. The Complaint Rule Results in a Duty to Defend.

All of that brings me, finally, to the application of the complaint rule. As discussed above, that rule requires that I determine whether the allegations made in the underlying complaint *might* be covered under the parties' policy. *See supra* Part III.A. Here, AOIC cites three portions of the parties' policy that it believes preclude coverage for Zurich's allegations in the Underlying Action.[9]

---

WL 124504 (D. Utah 2013) (interpreting Utah's complaint rule but allowing extrinsic evidence in to determine a duty to defend).

[9] In its complaint, AOIC additionally argues that exclusions "¶j(6)" and "¶j(7)" of the parties' policy defeats its duty to defend. ECF No. 2 at ¶28. AOIC, however, does not appear to raise those arguments in its response to HCC's motion.

First, it cites the "COVERAGE A, ¶k" portion of the parties' policy, which excludes from coverage "property damage" to "your product arising out of it or any part of it." ECF No. 14-4 at 9 (Policy).

Second, it cites "¶l" of that subsection, which excludes coverage for "property damage" if it arises out of HCC's work or any part of it and if it is "included in the 'products-completed operations hazard.'" *Id.* In plain English, that means that damages to HCC's work that occur *after* the work at issue was fully completed are not covered. *Id.* at 22; *see McGowan v. State Farm Fire & Cas. Co*., 100 P.3d 521, 525 (Colo. App. 2004) ("[W]ork must be 'deemed completed' for the property damage at issue to constitute a products-completed operations hazard.")

Finally, AOIC cites "¶m" of that subsection, which excludes coverage for "impaired property" arising out of a defect, deficiency, or inadequacy in HCC's work. ECF No. 14-4 at 9. "Impaired property" is subsequently defined as tangible property other than HCC's product or its work "that cannot be used or is less useful because" it either: (a) "incorporates" HCC's product or work "known or thought to be defective, deficient, inadequate[,] or dangerous[;]" or (b) because HCC failed to fulfill the terms of a contract or agreement. *Id.* at 20. Furthermore, in order to constitute "impaired property," it must be true that such property can be restored to use by either "repair, replacement, adjustment[,] or removal of" HCC's product or work *or* by HCC fulfilling the terms of its underlying contract or agreement. *Id.*

For the reasons below, I find that none of these exceptions definitively brings Zurich's allegations out from under the scope of the parties' policy and therefore that AOIC has a duty to defend HCC in the Underling Action.

For starters, the exclusions contained at ¶k and ¶l, which exclude coverage for damages to *HCC's* property or work, are inapplicable for the simple reason that Zurich's main allegation in the Underlying Action is that HCC caused damages to *Otter's* property (i.e., concrete slabs) rather than HCC's own "work" or part of it (i.e., the coating). *See* ECF No. 14-3 at ¶16 ("As a result of both the failed first application and installation of the floor system and the failed second installation and application of the floor system *the concrete slab* has been damaged requiring both repair of the concrete and application of the new floor system.") (emphasis added); ECF No. 14-4 at 24 (definitions of HCC's "work" and "product"). *See also KF 103*, 630 F. App'x at 831 ("If *some* of the allegations in the complaint may fall within the policy coverage while other allegations do not, the insurer *must* defend against the *entire* complaint because there may be some basis on which the insurer is ultimately liable.") (emphasis added).

To be fair, it could be argued that the concrete slabs became "part of" HCC's "work" after HCC finished coating them.[10] *See* ECF No. 14-4 at 24 (defining "[y]our work" to include "[w]ork or operations performed by you or on your behalf"). However, given how Zurich has alleged that HCC caused damages in the Underlying Action, there are significant problems with that interpretation. *See* ECF No. 14-3 at ¶¶12, 16 (separating out "the concrete" and "the floor system" in discussing damages and defining the latter as consisting of HCC's work). In any event, because the complaint rule results in a duty to defend if it is even remotely possible that there is policy coverage, *see KF 103*, 630 F. App'x at 813, these exclusions do not defeat AOIC's duty to defend HCC here.

---

[10] Importantly, construing the entire coated floor (i.e., the concrete *and* HCC's coating) as HCC's "work" or "part of it" results in blowback for AOIC. That is, it renders the exclusion found at ¶m, discussed *infra*, inapplicable since no "impaired property" could possibly have been involved. *See* ECF No. 14-4 at 20 (defining "impaired property" to mean "tangible property, *other than 'your product' or 'your work,'* that cannot be used or is less useful . . .") (emphasis added).

13

Similarly, the exclusion found at ¶m does not help AOIC for two reasons. First, because that exclusion can reasonably be interpreted to "appl[y] only to instances where property has not been physically injured," and that is simply not true here from the allegations Zurich has made in the Underlying Action.[11] *Am. Family Mut. Ins. Co.*, 659 F. Supp. 2d at 1134 (interpreting an identical "impaired property" exclusion and finding it inapplicable for the same reason); *DCB Constr. Co., Inc. v. Travelers Indem. Co. of Ill.*, 225 F. Supp. 2d 1230, 1233 (D. Colo. 2002) (finding that an identically-worded "impaired property" exclusion applied because the evidence did not show any physical damage to hotel walls that a contractor was forced to repair for failure to meet the contract's level of soundproofing). And second, because "exclusion m" can be interpreted not to apply where, as here, there is damage to physical property *other* than HCC's work product. *See Am. Family Mut. Ins. Co.*, 659 F. Supp. 2d at 1134 (finding that the insurance company had not shown as a matter of law that the 'impaired property' exclusion applied because the underlying complaint in that case alleged damages to physical property other than the insured's work product).

For those reasons, I find that under the complaint rule AOIC does have a duty to defend HCC in the Underlying Action. HCC's motion for a partial summary judgment on that question is accordingly GRANTED.

---

[11] Whether this exclusion applies when property is alleged to have been physically damaged or whether it only applies to non-physical "loss of use" damages appears to be up for debate. *See Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc*., 10 F. Supp. 3d 252, 269 n.4 (D. Conn. 2014) (collecting cases with differing interpretations). Indeed, I have encountered this exclusion before and found it quite difficult to construe myself. *See, e.g.*, *Am. Family Ins. Co. v. Apartment Builders*, LP, 11-CV-01380-RBJ-BNB, 2012 WL 5332201, at *6 (D. Colo. Oct. 29, 2012). In any event, as I have found before, I find here that AOIC has not met its burden under Colorado law to *definitively* establish the policy exclusion applies. *See Mt. Hawley Ins. Co. v. Creek Side at Parker Homeowners Ass'n, Inc*., 11-CV-2658-RBJ, 2013 WL 104795, at *3 (D. Colo. Jan. 8, 2013) ("Exclusion m excludes damage to 'impaired property or property not physically injured.' . . . This case involves property that was physically injured and there is, at a minimum, a genuine dispute of fact as to whether any of the damage would fall within the policy's definition of 'impaired property.'"); *see also Hecla*, 811 P.2d at 1090 ("In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions *are not subject to any other reasonable interpretations*.") (emphasis added).

### B. HCC's Motion to Stay [ECF No. 23].

With that, I now turn to HCC's motion to stay. That motion seeks to bifurcate and stay the remainder of this case, which includes: (1) AOIC's claim regarding a duty to indemnify HCC; (2) AOIC's request for additional discovery on HCC's knowledge of alleged damages at Loveland Airport; (3) and HCC's counterclaims. *See* ECF No. 23.

Whether to stay the remainder of this anticipatory declaratory action is a relatively straightforward inquiry. As the Colorado Supreme Court has explained, a court should only decide issues in anticipatory declaratory actions (such as an insurance company's duty to indemnify) when those issues are, among other things, "independent of and separable from the underlying action." *Constitution Assocs.*, 930 P.2d at 562 ("In addition to presenting a justiciable controversy and satisfying the finality standard, an anticipatory action for declaratory relief must also concern issues that are independent of and separable from those in the underlying case. Without meeting this standard, a trial court should refuse to hear the action because of the potential prejudice to the parties in the underlying case."); *see also String Cheese Incident, LLC v. Stylus Shows, Inc.*, 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) ("The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26(c) does however, permit the court to 'make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense'").

Here, because the remainder of this case is intimately intertwined with the Underlying Action, to the extent HCC's motion seeks a stay of the remainder of this case pending the resolution of the Underlying Action it is GRANTED IN PART. After all, in order to decide AOIC's duty to indemnify claim, I will have to determine, among other things, whether damages

occurred at the project site, whether HCC was responsible for such damages, and to what extent HCC had prior knowledge of damages before its policy with AOIC incepted.[12] Several of those issues—namely, causation and damages—are *precisely* what the court in the Underlying Action will decide. To force HCC to litigate those issues now in front of Zurich (a defendant here and the plaintiff in the Underlying Action) would therefore substantially prejudice HCC's defense in the Underlying Action—an outcome the Colorado Supreme Court sought to avoid in requiring that anticipatory declaratory actions be independent and separate from any underlying case. *See Constitution Assocs.*, 930 P.2d at 562–63.

For that same reason, discovery into HCC's alleged prior knowledge of damages must also be stayed pending the resolution of the Underlying Action. In essence, AOIC seeks additional discovery to determine whether HCC had knowledge about damage to the concrete at Loveland Airport before its policy with AOIC incepted. Put another way, it wants additional discovery to determine whether HCC knew or should have known before it applied the second coating that its work may have *already* damaged the concrete slabs at the project site. To allow discovery into that issue could very well substantially prejudice HCC by opening it up not only to liability in the Underlying Action for the claims Zurich has already asserted, but it might also, depending on what is revealed, give Zurich reason to file additional claims against HCC. *See* ECF No. 23 at 8.

---

[12] AOIC argues that the sole issue that I must decide with respect to its duty to indemnify claim is whether HCC had prior knowledge of damages at the project site and that this issue is not raised in the Underlying Action. However, in its complaint AOIC cites several additional exclusions within the parties' policy unrelated to HCC's prior knowledge and argues that they, too, defeat AOIC's duty to indemnify. *See, e.g.*, ECF No. 2 at ¶33 ("Furthermore, even to the extent that coverage may exist under the insuring agreement, which Auto-Owners disputes, *one or more of the policy exclusions cited above operate*, clearly and unequivocally, to negate any such coverage. Therefore, Auto-Owners has no duty to defend *or indemnify* HCC with respect to Zurich's claims in the underlying action.") (emphasis added). Thus, this case is much more than merely a dispute over HCC's prior knowledge of damages.

Finally, it is clear that HCC's own counterclaims are also tied up with the issues in the Underlying Action because they hinge on HCC's liability in that case and, secondarily, AOIC's duty to indemnify. For those reasons, the Court GRANTS HCC's motion to the extent it seeks as stay on the remainder of this case until the Underlying Action is resolved.[13]

**ORDER**

For the reasons above, the Court GRANTS HCC's motion for a partial summary judgment [ECF No. 14] and GRANTS IN PART and DENIES IN PART its motion to bifurcate and stay the remainder of this case [ECF No. 23]. Accordingly, the Court finds that AOIC has a duty to defend HCC in the Underlying Action and stays the remainder of this case pending the ultimate resolution of that underlying case.

DATED this 12th day of June, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[13] Because I have already decided AOIC's duty to defend, to the extent HCC seeks to bifurcate the remainder of this case from a determination of that issue HCC's motion is DENIED as moot.